# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUNSHINE RETIREMENT LIVING LLC, a Delaware limited liability company, | No. 59491-9-II |
| Appellant, | |
| v. | |
| DIANE C. SCHWICKERATH, an individual, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Sunshine Retirement Living LLC is a company that runs retirement homes. Diane Schwickerath and her sister, Nancy Kavathan, enrolled their father, David Alvarado, in a Sunshine facility in California. When completing multiple enrollment forms for her father, Schwickerath signed an alternative dispute resolution agreement form containing language asserting the person signing had power of attorney. But Schwickerath's sister Kavathan, not Schwickerath, had power of attorney for Alvarado. In Sunshine's other forms, the family consistently indicated that Kavathan held their father's power of attorney. Sunshine had a policy to obtain a copy of each resident's power of attorney documents, but here it failed to do so.

Alvarado fell several times in the first few days he was at the Sunshine facility, causing the family to move him out. Several months later, Alvarado sued Sunshine for elder abuse and other related claims in the state of California. Sunshine sought to enforce the alternative dispute resolution agreement, but the California court denied this request because Schwickerath did not have power of attorney and thus did not have authority to bind her father to the agreement when she signed it. Alvarado passed away during the California proceedings.

Sunshine sued Schwickerath in the state of Washington for fraud and negligent misrepresentation based on Schwickerath's signature on the alternative dispute resolution agreement. Sunshine requested damages for costs incurred trying to enforce the alternative dispute resolution agreement plus the anticipated difference between Sunshine's litigation costs in the California case and Sunshine's costs in an arbitration proceeding. Schwickerath moved for summary judgment dismissal, which the trial court granted. Sunshine appeals.

We affirm. We hold that even viewing all of the evidence in the light most favorable to Sunshine, no reasonable trier of fact could find that Sunshine had a right to rely on, or reasonably relied on, the assertion in the alternative dispute resolution agreement form that Schwickerath held her father's power of attorney. Because reasonable reliance is a necessary element of fraud and negligent misrepresentation, Sunshine's claims fail as a matter of law. Thus, the trial court did not err when it granted summary judgment and dismissed Sunshine's complaint.

FACTS

I. BACKGROUND

Sunshine operated 38 retirement homes in several states, as well as a corporate office that reviewed and stored documentation collected from residents and prospective residents. Sunshine had a policy of obtaining a copy of the power of attorney document for each resident before admitting the resident. Sunshine also collected an emergency contact form for each resident and used this document to determine who had power of attorney for its residents.

Alvarado granted general durable power of attorney to his daughter Kavathan in September 2020. He designated his daughter Schwickerath only as Kavathan's successor agent in case Kavathan should die or become incompetent. In December 2021, Schwickerath filled out Alvarado's emergency contact form for Sunshine. Schwickerath identified both herself and

Kavathan as contacts in the emergency contact form, adding the letters "POA," meaning "power of attorney," next to Kavathan's name. Clerk' Papers (CP) at 213. Schwickerath did not add the letters "POA" next to her own name. *Id.*

Approximately one month later, on Tuesday, January 18, 2022, as part of a series of forms to enroll her father in a Sunshine retirement home in California, Schwickerath signed an alternative dispute resolution agreement with Sunshine on behalf of Alvarado. Sunshine countersigned the same day. The agreement waived the parties' right to resolve disputes in state or federal court and bound them to mediation or binding arbitration. Directly above Schwickerath's signature, the agreement stated:

> I am the Legal Representative of the Resident and, in that capacity, as well as individually, I [h]ave read this agreement and have had it explained to me. I am signing this Agreement on behalf of the Resident as well as on my own behalf. I am authorized to sign this Agreement on behalf of the Resident. *I have authority to act on behalf of the Resident, pursuant to a power of attorney, conservatorship, or guardianship, I have provided a copy of the legal documents to support my authority to sign this Agreement on behalf of the Resident.*

CP at 201 (some emphasis omitted). Signing the agreement was optional, and the agreement was not a condition of admission. Schwickerath did not have power of attorney, conservatorship, or guardianship related to her father when she signed the agreement. Contrary to its policy, Sunshine did not obtain a copy of any power of attorney for Alvarado when it countersigned the dispute resolution agreement or before it admitted Alvarado.

On January 20, 2022, one day before Alvarado was admitted, Kavathan signed and submitted additional documents, three of which again noted that Kavathan held Alvarado's power of attorney.

Sunshine admitted Alvarado as a resident on Friday, January 21, 2022, three business days after Schwickerath signed the alternative dispute resolution agreement. He then suffered a series of falls over the weekend. During Alvarado's brief stay, the people caring for him understood Kavathan held his power of attorney. Alvarado left Sunshine's facility on Monday, four days after he was admitted.

Even after Alvarado moved out, Sunshine never obtained a copy of Alvarado's power of attorney document.

## II. Litigation

Several months later, in August 2022, Alvarado sued Sunshine in a California state court, alleging that he suffered fractured ribs and a head injury at the Sunshine facility and claiming elder abuse and negligence. Sunshine still did not obtain a copy of Alvarado's power of attorney document. Sunshine moved to compel arbitration under the alternative dispute resolution agreement, and the California court denied the motion. Alvarado died while the case was before a California appellate court and Kavathan, acting as his successor in interest, was substituted as the respondent on appeal. The California appellate court affirmed because Schwickerath did not have authority to bind her father to the alternative dispute resolution agreement.

Sunshine sued Schwickerath in Washington for fraud and negligent misrepresentation related to the representation Schwickerath made by signing the alternative dispute resolution agreement. Sunshine alleged damages for costs incurred trying to enforce the alternative dispute resolution agreement plus the anticipated difference between Sunshine's litigation costs in the California case and what would have been Sunshine's costs in an arbitration proceeding had the alternative dispute resolution agreement been enforced.

In discovery, Schwickerath admitted she did not have power of attorney, conservatorship, or guardianship over her father when she signed the alternative dispute resolution agreement form. And Sunshine conceded it never received a copy of any power of attorney for Alvarado. A CR 30(b)(6) representative for Sunshine did not know whether a Sunshine employee had asked Schwickerath, Kavathan, or Alvarado for a copy of the power of attorney document before Alvarado was admitted. Sunshine was not able to identify any steps it took to make sure Schwickerath had authority to bind Alvarado to the alternative dispute resolution agreement.

Schwickerath moved for summary judgment dismissal of Sunshine's claims. She argued Sunshine could not prove several elements of fraud and negligent misrepresentation, including that Sunshine did not have the right to rely, and did not reasonably rely, on the statement made in the alternative dispute resolution agreement form. Schwickerath submitted the evidence recited above about Alvarado's admission forms, Sunshine's failure to seek or obtain a copy of Alvarado's power of attorney document, and deposition testimony showing that Sunshine's caregivers understood Kavathan to hold Alvarado's power of attorney. In addition, Schwickerath declared she told Christopher Giron, Sunshine's community development director who had been communicating with her throughout her father's onboarding process, that she did not have power of attorney and that Kavathan did. Schwickerath also claimed she reminded Giron that she had provided no legal documents in support of her authority to sign the agreement form. She further claimed Giron told her to sign the agreement anyway.

In contrast, Sunshine argued, among other things, that there were disputed issues of fact. Sunshine relied on the alternative dispute resolution form alone to show why it believed Schwickerath held Alvarado's power of attorney. Moreover, declarations from Giron showed that Giron first stated he was unable to recall any of the facts and circumstances related to his

communications with Schwickerath, Kavathan, or Alvarado. Giron later declared that he would not have asked Schwickerath to sign the alternative dispute resolution agreement if she told him she did not hold power of attorney for Alvarado. Giron also stated he "would not have, and would never" have asked a resident's family member to execute any document he knew the family member did not have the legal authority to execute. CP at 267. A former executive director at Sunshine testified in a deposition that Giron had on another occasion asked someone to sign documents that he knew they did not have authority to sign and that she had recommended disciplinary action be taken as a result. Given these disputed facts, Sunshine argued summary judgment should not be granted.

Relying only on undisputed evidence, the trial court granted Schwickerath's motion and dismissed the case. Sunshine appeals.

ANALYSIS

I. RELIANCE

Sunshine argues that the trial court erred in granting Schwickerath's motion for summary judgment and dismissing Sunshine's claims for fraud and negligent misrepresentation. Sunshine contends the trial court erred in concluding as a matter of law that Sunshine did not have the right to rely, and did not reasonably rely, on Schwickerath's misrepresentation. We disagree.

We review the trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Specialty Asphalt & Constr., LLC v. Lincoln County*, 191 Wn.2d 182, 196, 421 P.3d 925 (2018). Summary judgment is appropriate if, when taking the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party, "'reasonable minds could reach but one conclusion.'" *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d

720, 728, 452 P.3d 1205 (2019) (quoting *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 478, 296 P.3d 800 (2013)).

A.      Relevant Element of Fraud and Negligent Misrepresentation

For Sunshine to prove fraud against Schwickerath, Sunshine had to establish Sunshine's reliance on the truth of the representation and its "right to rely upon" the representation, among other elements. *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). In the context of fraud, to have a right to rely upon the representation, Sunshine's reliance must have been "reasonable under the circumstances." *Williams v. Joslin*, 65 Wn.2d 696, 698, 399 P.2d 308 (1965); *see also Westby v. Gorsuch*, 112 Wn. App. 558, 573, 50 P.3d 284 (2002) (referring to the fraud element as "right to rely" or "[j]ustifiable [r]eliance"). The right to rely is intrinsically linked to the duty of the one relying on the representation to exercise diligence with regard to those representations. *Alejandre v. Bull*, 159 Wn.2d 674, 690, 153 P.3d 864 (2007). The extent to which the person receiving the representation must verify the truth of the representation, if they must do so at all, depends upon the circumstances of the case. *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 384, 745 P.2d 37 (1987).

For Sunshine to prove negligent misrepresentation against Schwickerath, Sunshine had to establish that it relied on the false information and that its "reliance was reasonable." *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). In the context of negligent misrepresentation, reliance is reasonable or justifiable when it is "'reasonable under the surrounding circumstances.'" *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d 619 (2002) (internal quotation marks omitted) (quoting *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 828, 959 P.2d 651 (1998)). Ordinarily, whether reliance was justifiable is a question of fact, but when reasonable

minds could reach but one conclusion, summary judgment is appropriate. *Schaaf v. Highfield*, 127 Wn.2d 17, 30, 896 P.2d 665 (1995).

We address the fraud element of "right to rely" and the negligent misrepresentation element of "reasonable reliance" together because there is no difference in application between the two under the facts of this case.

B.      Reasonable Reliance

Generally, when there is a positive, distinct, and definite representation, the person receiving the representation has no duty to investigate the truth of the representation. *Westby*, 112 Wn. App. at 575. However, a person does not have a right to rely on a representation if "'its falsity is obvious to [the] senses,'" or they have "'reason to know of facts'" that make their reliance unreasonable. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 541A cmt. a (AM. L. INST. 1977)). The issue of reasonable reliance incorporates "'the question of [the plaintiff's] diligence in ascertaining the facts for himself . . . [and] his exercise of care and judgment in acting upon representations which run counter to knowledge within his possession or reach.'" *Westby*, 112 Wn. App. at 575 (alterations in original) (quoting *Rummer v. Throop*, 38 Wn.2d 624, 633, 231 P.2d 313 (1951)).

The Washington Supreme Court has found a party's reliance to be unreasonable where the party possesses written documents, knowledge, or expertise indicating the falsity of the representations at issue. *Williams*, 65 Wn.2d at 697-98 (motel buyer who possessed deposit slip documents showing motel's income did not reasonably rely on contradictory oral representation of income); *Schaaf*, 127 Wn.2d at 30 (plaintiff who stated he offered a lower price, because he knew "'the house was 16 years old and [he] thought the house would need a new roof,'" could not justifiably rely on appraisal report that failed to mention the roof needed repair) (quoting record)*;*

*Puget Sound Nat. Bank v. McMahon*, 53 Wn.2d 51, 52-53, 330 P.2d 559 (1958) (plaintiff with expertise from multiple years of owning and managing rental units who inspected apartment building had no right to rely on sellers' representations that the apartments had new plumbing, new furniture, and a certain monthly net income where the condition of the apartments showed otherwise). In contrast, in *Westby*, this court upheld a general jury verdict finding fraud and/or negligent misrepresentation against a defendant who "had a far more sophisticated and accurate understanding" of the value of antique items than did the plaintiff, holding that the plaintiff should have been able to rely on the defendant's representations. 112 Wn. App. at 575.

C.     Analysis of Sunshine's Reliance

Here, for Sunshine to survive summary judgment, Sunshine had to show specific facts creating a genuine issue of fact related to reasonable reliance. CR 56(e). Even viewing the facts in the light most favorable to Sunshine, including treating as true Giron's declaration that he would not have told Schwickerath to sign the alternative dispute resolution agreement form when she did not have power of attorney from Alvarado, Sunshine still had obvious reason to know reliance on Schwickerath's representation was unreasonable based on Sunshine's documents, knowledge, and expertise. *Williams*, 65 Wn.2d at 697-98 (documents); *Schaaf*, 127 Wn.2d at 30 (knowledge); *Puget Sound Nat. Bank*, 53 Wn.2d at 52-53 (expertise).

Sunshine was a sophisticated corporate entity with a policy of obtaining a copy of each prospective resident's power of attorney before admission. Sunshine had a corporate office that reviewed prospective residents' documentation. Sunshine's sophisticated operation involving regular admission of residents to multiple facilities nationwide is relevant to whether its reliance on Schwickerath's signature on the alternative dispute resolution agreement form was reasonable. Thus, we view the facts recognizing Sunshine's sophistication.

First, Sunshine did not obtain a copy of Alvarado's power of attorney despite its policy to do so. A review of its own file on Alvarado would have shown Sunshine it did not have a copy of a document assigning Alvarado's power of attorney to Schwickerath or anyone else. The fact that Schwickerath had not provided a copy of the power of attorney document, also rendered at least one assurance made in the alternative dispute resolution form obviously false because the form stated that the signer had provided a copy of the relevant power of attorney. Sunshine's CR 30(b)(6) representative did not know whether a Sunshine employee had asked Schwickerath, Kavathan, or Alvarado for a copy of the power of attorney document, an obvious and easy step necessary to determine who had Alvarado's power of attorney. In addition, Sunshine's CR 30(b)(6) representative could not name any steps Sunshine took to make sure Schwickerath had authority to bind Alvarado to the alternative dispute resolution agreement.

Second, on Alvarado's emergency contact form for Sunshine, Schwickerath identified both herself and Kavathan as emergency contacts but only marked Kavathan's name with "POA," indicating power of attorney. CP at 213. The lack of a "POA" designation next to Schwickerath's name on the emergency contact form contradicted her signature on the alternative dispute resolution agreement form. Moreover, Schwickerath filled out the emergency contact form one month before Alvarado was admitted to Sunshine's retirement home, so Sunshine had more than sufficient time to obtain a copy of Alvarado's power of attorney document. And three other forms in Sunshine's possession indicated Kavathan held Alvarado's power of attorney.

Finally, caregiving staff understood that Kavathan held Alvarado's power of attorney. In sum, all of the other forms and information Sunshine possessed indicated Kavathan, not Schwickerath, held Alvarado's power of attorney.

In light of these facts, Sunshine has not offered any evidence to establish it exercised even minimal diligence in determining whether Schwickerath actually had authority to sign the dispute resolution agreement form on her father's behalf. To the extent Sunshine argues it had no time to review Alvarado's documentation, because he was admitted on a Friday and permanently left the facility the next Monday, the alternative dispute resolution form was executed before his admission, so Sunshine had several business days to obtain confirmation about his power of attorney. Schwickerath signed the agreement on Tuesday, January 18, and Sunshine countersigned the same day despite not having a copy of a power of attorney appointing Schwickerath. Sunshine then admitted Alvarado on Friday, January 21, and he left the following Monday. This gave Sunshine at least three business days to review the documentation before Alvarado left their facility.

More importantly, nothing prevented Sunshine from seeking a copy of Alvarado's power of attorney documents even after he left Sunshine's facility but before Sunshine detrimentally relied on the dispute resolution agreement in the California court. Sunshine admits that its reliance did not occur when Alvarado was admitted, but rather when it sought to enforce the agreement in the California lawsuit. It was only at that point that Sunshine suffered its claimed damages. After Schwickerath signed the alternative dispute resolution agreement in January 2022, Sunshine had months before the point it detrimentally relied on the agreement by moving to enforce it in the California court sometime after the lawsuit was filed in August 2022. Even if there could have been two people who simultaneously held Alvarado's power of attorney as Sunshine contends, this does not negate the necessity for the obvious due diligence of seeking and obtaining a copy of the power of attorney document that Sunshine intended to rely on in the California suit. *Westby*, 112 Wn. App. at 575.

Sunshine argues there is a dispute of material fact as to whether Giron told Schwickerath to sign the dispute resolution agreement even though she did not hold Alvarado's power of attorney. But even assuming the facts in the light most favorable to Sunshine, as we must, no reasonable fact finder would conclude Sunshine exercised even minimal diligence in determining whether Schwickerath really had power of attorney, given the conflicting information in Alvarado's admission forms and the fact that Sunshine ignored its own policy of obtaining a power of attorney before admitting a resident. Thus, whether or not Giron told Schwickerath to sign the alternative dispute resolution form, even though she did not hold Alvarado's power of attorney, is not a material fact.

No duty exists to do exhaustive investigation. But in these circumstances, even considering the facts in the light most favorable to Sunshine, no reasonable fact finder would conclude that Sunshine was reasonable to rely on Schwickerath's signature on the alternative dispute resolution agreement alone. Sunshine possessed documents that were contradictory as to who had power of attorney. Sunshine did not seek or obtain a copy of a power of attorney for Alvarado, and it could have done so easily even after Alvarado's death.

On appeal, Sunshine argues for the first time that California law on fraud and negligent misrepresentation should be applied over Washington law because of conflict of laws principles. We decline to reach this issue under RAP 9.12, which restricts review of motions for summary judgment to "evidence and issues called to the attention of the trial court." Sunshine fails to show that it raised this conflict of laws issue or the substance of California law before the trial court, and its arguments to the trial court were based on Washington law. Sunshine further argues summary judgment was inappropriate because even if its reliance was not reasonable, Schwickerath was at least partially to blame under a comparative fault analysis. But the issue of comparative fault was

12

also never raised at the trial court, so we will not consider this issue. *See* RAP 9.12. Finally, Sunshine contends there are genuine issues of material fact as to other elements of fraud and negligent misrepresentation. Because we conclude that Sunshine failed to establish reasonable reliance as a matter of law, its claims fail and we need not reach these other issues.

CONCLUSION

We affirm the trial court's grant of Schwickerath's motion for summary judgment and dismissal of Sunshine's claims of fraud and negligent misrepresentation. Sunshine did not have the right to rely, and did not reasonably rely, on Schwickerath's signature on the alternative dispute resolution agreement form because Sunshine possessed documents, knowledge, and expertise indicating the falsity of the misrepresentation and did not exercise even minimal diligence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

CRUSER, C.J.