[No. 7336.   Decided June 12, 1909.]

ABRAHAM KLINE *et al.*, *Appellants*, v. BONHAM GALLAND *et al.*, *Respondents.*[1]

EQUITY—LACHES—STALE DEMANDS.  Where parties to whom an estate had been devised, subject to a life estate in the wife, delayed for fifteen years in bringing an action to set aside probate proceedings declaring the separate estate of a husband to be community property, and to set aside deeds made by them on fraudulent representations, the delay being until four months after the death of the wife, who it is alleged had fraudulently deceived the parties as to the nature of the estate, there is such gross laches as to bar the action, the heirs having for many years lived in Washington and adjoining states, some of them in the city where the judgments were matters of record and accessible, without taking any steps to contest the proceedings, although knowing that they had some interest in the estate, and making no explanation of their continued ignorance as to their rights.

INFANTS—LACHES—REPUDIATION OF CONTRACT.  Where a minor, before majority, gave a deed of his interest in an estate, and, after becoming of age, failed to promptly repudiate the deed, and only commenced action within three days of the year limited therefor to set aside the probate proceedings, which had been a matter of record for fifteen years, he is guilty of laches barring a recovery, regardless of the statute of limitations.

Appeal from a judgment of the superior court for King county, Morris, J., entered March 24, 1908, upon sustaining a demurrer to the complaint, dismissing an action to vacate certain orders and deeds, and to quiet title, after a trial before the court without a jury.   Affirmed.

*Robertson & Rosenhaupt* and *Reynolds, Ballinger & Hutson*, for appellants.

*Shank & Smith* and *Kerr & McCord*, for respondents.

*Shepard & Flett*, for respondent Northwestern Mutual Life Insurance Company.

CROW, J.—Action by Abraham Kline, Laura Kline, his wife, and twenty-five others, against Bonham Galland,

[1] Reported in 102 Pac. 440.

Emanuel Rosenberg, and Isaac Cooper, as executors of the last will and testament of Caroline Kline-Galland, deceased, and others, to vacate certain orders made in the administration of the estates of three several decedents, to set aside a number of deeds, and to obtain the title to and possession of real estate. The defendants interposed demurrers to the complaint, which were sustained. The plaintiffs thereupon declined to plead further, and judgment of dismissal was entered, from which they have appealed.

The controlling question before us is the sufficiency of the complaint. The appellants have prepared an able and exhaustive brief, presenting numerous questions which we need not consider; for, while several reasons appear in the record for affirming the judgment of the trial court, the complaint itself shows such gross and unexplained laches as to preclude the appellants from obtaining any relief in a court of equity.

The complaint, in substance, alleges, that Lazarus Kline and Caroline Kline, his wife, lived in the state of Oregon continuously, many years prior to 1877, when they moved to Seattle, Washington; that Lazarus brought with him a separate estate of the value of $30,000; that he invested $15,000 thereof in a mercantile business; that about eleven years later, with the proceeds and profits of such separate estate and mercantile business, he purchased the real estate now in dispute, the same being located at Second avenue and University street in the present business district of Seattle; that he died testate on April 15, 1891; that his widow, Caroline Kline, was appointed executrix of his last will and testament; that he owned other real estate in Seattle and King county, and that by his will he made the following devises:

"I give and bequeath the property situated on Second and University streets in the city of Seattle, state of Washington, to my brothers Isaac Kline, Lob Kline and Moses Kline, residing in Germany, to my brother Abraham Kline of Seattle, state of Washington, and to my brother in law Joshua Seitenbach, also a resident of Germany, the income of the said property to be used and enjoyed by my wife, Caroline

Kline, during her lifetime and after her death the aforesaid property shall be divided equally between the aforesaid heirs.

"I charge my estate to pay to my brother Abraham Kline the following sums, namely: Five hundred dollars in the year 1893, five hundred dollars in the year 1894, five hundred dollars in the year 1895, and five hundred dollars in the year 1896.

"I further charge my estate to pay to my brother Moses Kline, residing in Germany, the sum of one hundred dollars every first day of May in each year during his natural life.

"It is my wish and I demand that the indebtedness owing to me by Joseph Kline and Abraham Kline of Seattle, State of Washington, shall be cancelled and no further demand on them to be made for the payment of the same.

"All the rest and residue of my estate, real, personal and mixed and of what kind soever and wheresoever situated of which I may die possessed I give and bequeath to my beloved wife Caroline Kline";

that in one year all debts of the estate were paid; that the executrix filed her petition for final distribution, in which she alleged the real estate above mentioned was community property; that statutory notice was given; that thereafter without other or personal notice to any of the legatees, a final decree was entered in the matter of the estate, by which it was adjudged that the realty was community property, and distribution was made as follows:

"An undivided half thereof to said Caroline Kline, said undivided one-half being her community interest in said property, and a life estate in the other undivided one-half thereof to said Caroline Kline, according to the terms of said will; and the remainder of said undivided one-half after the termination of said life estate to said Isaac Kline, Abraham Kline, Lob Kline, Moses Kline, and Joshua Seitenbach";

that Lob Kline, brother and legatee of the deceased, died intestate in Germany in 1898, leaving a widow and nine heirs at law, now appellants in this action, all of the age of majority except one, Gustave Kline, a minor son who reached his majority on June 25, 1906; that Moses Kline, another brother and legatee, died intestate in Germany in

1901, leaving a widow and four heirs at law, all of the age
of majority, now appellants in this action; that none of the
appellants at any time until immediately prior to the com-
mencement of this action had any knowledge that the estate
of Lazarus Kline, deceased, was his separate property, and
not community property; that Caroline Kline, his executrix,
represented to appellants that she was the owner of an un-
divided one-half interest in the Second avenue and University
street property, and a life estate in the other undivided half
interest, and that the remainder of the latter half was owned
equally by Abraham Kline, the Moses Kline estate, Isaac
Kline, the Lob Kline estate, and Joshua Seitenbach; that
Caroline Kline later intermarried with one Bonham Galland,
and was thereafter known as Caroline Kline-Galland; that
in 1904 Caroline Kline-Galland fraudulently represented to
the appellants that the real estate on Second avenue and
University street was only of the value of $150,000, when it
was in fact worth $400,000; that relying on such represen-
tations, the appellants orally agreed to sell her their inter-
est for $75,000, ignorantly believing it to be only an undi-
vided one-half interest subject to her life estate; that $15,000
was to be paid by her to each of the five original legatees or
their representatives; that Caroline Kline-Galland caused
two separate but unnecessary administration proceedings to
be had in the superior court of King county, upon the re-
spective estates of Lob Kline and Moses Kline, deceased, the
same person being appointed administrator of each estate;
that the appellants, who are heirs of the decedents, knew some
such proceedings were being conducted, to promote the sale
of their supposed interests to Caroline Kline-Galland, but
that they had no precise knowledge of the same; that in the
probate proceedings sales were made of the interests of Lob
Kline and Moses Kline, which were purchased by Caroline
Kline-Galland, for $15,000 each; that the sales were con-
firmed; that administrator's deeds were executed and deliv-
ered; that on January 22, 1906, the administrator, on order

of court, made final distribution of the estates to the respective heirs of Lob Kline and Moses Kline, who accepted the same; that the share of the minor heir Gustave Kline was paid into the registry of the court for his use, where it has since remained, being refused by him; that Caroline Kline-Galland, in pursuance of her oral agreement and such administration proceedings, paid $15,000 for each of the five original interests represented by the legatees named in the will of Lazarus Kline; that each and all of the appellants, including the minor Gustave Kline, made deeds of conveyance to her under the mistaken belief that they were only conveying an undivided one-half interest subject to her life estate; that thereafter she mortgaged the property to raise the $75,-000 with which she purchased the appellants' interests; that Caroline Kline-Galland died testate in February, 1907, and that the respondents Bonham Galland, Emanuel Rosenberg, and Isaac Cooper are executors of her last will and testament.

This action was commenced about four months after the death of Caroline Kline-Galland, and three days before Gustave Kline, who verified the complaint, attained the age of twenty-two years. The appellants in part contend, that the real estate was Lazarus Kline's separate property; that the probate order of the superior court adjudging it to be community property was void; that being made without notice to any of the legatees, such order was a taking of their property without due process of law; that the sales made by appellants to Caroline Kline-Galland were ignorantly made by them for an inadequate consideration, by reason of her false and fraudulent representations upon which they relied as to the extent and value of their interests; that the several deeds executed and delivered by them should be set aside and vacated; that the probate proceedings in the estates of Lob Kline and Moses Kline were unnecessary; that the probate sales were void and should be vacated, for the reason that they were not necessary for the payment of debts, and that,

in any event, Caroline Kline-Galland did not obtain the interest of the minor heir Gustave Kline.

The respondents in part contend that some fifteen years prior to the commencement of this action, the superior court, sitting as a court of probate, decreed Caroline Kline to be the owner of an undivided one-half of the property as her community interest; that such decree is *res adjudicata;* that this action has not been commenced within the time limited by law; that the appellants have been guilty of gross and unexplained laches, and that the complaint does not state facts sufficient to constitute a cause of action.

The original order of distribution was made in the estate of Lazarus Kline on June 23, 1892. It adjudged that the real estate was community property, and awarded an undivided one-half thereof to Caroline Kline. That order has since been a public record. A number of the appellants have lived in Washington and adjoining states, some of them in Seattle, for many years since its entry. They were aware of the fact that they had some interest in the estate. Although the complaint in substance alleges that all of the appellants were ignorant of the law, ignorant of the extent of their interest in the estate, ignorant of its value, and ignorant of the purpose and legal effect of the administration of the estates of Lob Kline and Moses Kline, deceased, which probate proceedings were also matters of public record, it is nevertheless impossible to understand why they failed to avail themselves of accessible information afforded them by public records, and neglected to ascertain the value of the property, or how Caroline Kline-Galland could, for almost fifteen years, successfully prevent them from doing so. The complaint itself alleges that the property, which is situated in the business district of Seattle, has rapidly advanced in value. Adverting to the fact that a number of the appellants resided in and near that city, it would seem that under such circumstances, with existing public records to afford them accurate information, something more should be required of

them to excuse their laches and explain their delay in bring-
ing this action than a mere allegation of ignorance of their
rights, and the oft repeated statement that all of them, some
twenty-seven in number, were continually deceived and misled
by the false and fraudulent representations of Caroline Kline-
Galland. According to the complaint, they were in dense
ignorance of the true facts until after her death when, by
some mysterious method utterly unexplained, such ignorance
was suddenly supplanted by full and complete knowledge.
Her evidence was then lost, and the property had rapidly
appreciated in value.

Before appellants can secure any opportunity in a court
of equity to question such long standing judicial records, to
set aside their own deeds deliberately executed after long con-
tinued negotiations, they should, by good, clear, and suffi-
cient allegations, explain their ignorance, their unusual delay
in asking relief, and the suddenness with which they so readily
secured knowledge of all the facts immediately after the
death of Caroline Kline-Galland, when the possibility of pro-
ducing her evidence in court was forever precluded. Appel-
lants, in effect, assert that, because Caroline Kline-Galland
claimed the identical title awarded her by the decree of the
probate court, her representations were fraudulent, but they
signally fail to state any facts disclosing why or how they
learned of her alleged fraudulent actions and misrepresen-
tations so quickly after her death. *Sackman v. Campbell*,
15 Wash. 57, 45 Pac. 895.

Assuming the correctness of appellants' contention, that
Gustave Kline, who verified the complaint, had one year after
reaching his majority within which to bring this action,
nevertheless the principle of laches should apply as to him.
He knew all the facts before reaching his majority. He had
executed a deed to Caroline Kline-Galland, which he failed
to promptly repudiate, and although he declined to withdraw
the money deposited in the registry of the court, he delayed
action until only three days remained of the year succeeding

his majority within which he could question the judicial pro-
ceedings in the administration of his father's estate.

In *Kuhn v. Mason*, 24 Wash. 94, 64 Pac. 182, it has been
held by this court that, although a party may have a year
in which to set aside a judgment, still the person seeking to
set it aside must move with diligence within that year. Gus-
tave Kline by waiting until only three days remained of the
year, and then commencing action without any allegation to
explain his delay and laches, brought himself within the rule
there announced. In *Ferrell v. Lord*, 43 Wash. 667, 86 Pac.
1060, this court commented on the question of laches, saying:

"Where a case is of purely equitable cognizance, in the
application of the doctrine of laches courts of equity act
upon their own inherent doctrine of discouraging, for the
peace of society, ancient demands, and refuse to interfere
where there has been gross laches in prosecuting the claim
or long acquiescence in the assertion of adverse rights. In
such cases the statute of limitations does not necessarily
govern the court in the application of the doctrine of laches.
9 Ballard, Law of Real Property, § 757; *Gay v. Havermale*,
30 Wash. 622, 71 Pac. 190; *Boyer v. East*, 161 N. Y. 580,
56 N. E. 114, 76 Am. St. 290; *Galliher v. Cadwell*, 145 U. S.
368, 12 Sup. Ct. 873, 36 L. Ed. 738; *Penn. Mut. Ins. Co. v.
Austin*, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626.
There is no inflexible rule controlling the application of the
defense of laches. The facts and circumstances of each case
must govern courts of equity in permitting said defense to
be made. The authorities show that, while lapse of time is
one of the elements to be considered in applying this equitable
defense to stale claims, it is only one, and that it is not neces-
sarily the controlling or most important one. Regard must
be had to all of the facts and surrounding circumstances, and
if, when carefully considered, they do not appeal to the con-
science of the chancellor, on behalf of a claimant, the defense
of laches should be allowed."

The perfect means of knowledge which all of the appellants
possessed and of which they neglected to avail themselves,
should now estop them in this proceeding. The records of
the court were open to them, and although it be conceded that

Caroline Kline-Galland attempted by her alleged misrepresentations and statements to deceive them, they have shown no sufficient excuse for their long continued failure to inform themselves of the true situation by an examination of the records, and an investigation of the value of the property. Their unexplained laches has been so gross and inexcusable as to preclude them from obtaining any equitable relief.

The judgment is affirmed.

RUDKIN, C. J., PARKER, MOUNT, and DUNBAR, JJ., concur.

FULLERTON, J., concurs in the result.

GOSE, J. (concurring)—As I view the case, the minor Gustave Kline was concluded by the proceedings in the estates of Lazarus Kline, his uncle, and Lob Kline, his father. The deed of Gustave was therefore not necessary to transfer his inheritance. It follows that the question of laches has no application to him. I concur in the result.