[No. 14676.  *En Banc.*  January 2, 1919.]

MOLLIE JOHNSTON, *nee Mollie Thuneman, Appellant,* v.
SPOKANE & INLAND EMPIRE RAILROAD COMPANY
*et al., Respondents.*[1]

LIMITATION OF ACTIONS (56-58) — DISCOVERY OF FRAUD — LACHES.
An action for the rescission of the sale of corporate debentures or
certificates, misrepresented to be preferred stock, is barred by
laches and the statute of limitations, Rem. Code, § 159, subd. 4,
limiting actions for relief on the ground of fraud to three years
after discovery of the fraud, where the purchase was made in 1907
and action was not commenced until 1915, the certificate on its
face recited that it was for "Preferred Rights" issued under a
certain by-law referred to and made a part of it, and was neither
capital stock nor an incumbrance on real estate and the purchaser
was a woman of experience and a skillful investor who could not
have been misled and could not have misunderstood the contents
of the instrument upon a casual reading of it.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered October 25, 1916,
in favor of the defendants, in an action for rescission,
tried to the court. Affirmed.

*John B. Johnston, George W. Belt, A. E. Barnes,
Cyrus Happy,* and *Happy & Happy,* for appellant.

*Graves, Kizer & Graves,* for respondents.

HOLCOMB, J.—Respondent Spokane & Inland Em-
pire Railroad Company is a domestic corporation or-
ganized for the purpose of building and maintaining
an electric interurban railway system and for other
purposes in the states of Washington, Idaho, and Ore-
gon. It took over the properties of several existing
companies and organized with $10,000,000 capital
stock, all of which had been subscribed to the limit of
its capitalization. The promoters wanted an addi-
tional stock issue or a security which could be sold in

[1]Reported in 177 Pac. 810.

the market in addition to the bonds, but did not want a preferred stock, which they were advised was unauthorized by our local laws, or which could be voted as other stock; and they wanted a stock or security which could be retired at pleasure. After a great deal of legal consultation, the articles of incorporation and the by-laws were amended, the by-laws so as to change preferred stock to preferred certificates; and, upon further objection, the by-laws were finally, on October 25, 1906, amended to change preferred certificates to "preferred rights."

Thereafter over six million dollars' worth of "preferred rights" were issued and sold in the market, at home and abroad. Respondent Grinnell and family have been acquainted with, and intimate friends of, appellant for twenty-seven years, and through his corporation he had represented the appellant in numerous profitable business ventures. Appellant had the utmost confidence in Grinnell and was willing to believe, and did believe, that any business venture which he would offer or recommend would be safe and profitable. On July 13, 1907, Grinnell wrote the appellant the following letter:

"Spokane, Wash., July 13-07.
"Miss Mollie Thuneman,
        "Sullivan, Illinois.
        "Dear Mollie: Referring again to your letter of July 7th, will say that I would advise you to invest the $2,000 you sent me, which you say is your father's, in the preferred stock of the Spokane & Inland Empire Railroad Company. This stock can be had at $90, pays 5 per cent dividend and 1¼ per cent annually, which is practically 6 per cent interest. The company has the right to redeem this stock by paying $135 for it, and will probably do so in a few years. I would also advise you to put about $2,000 into the common stock, which does not pay a dividend at the present

time, and the earnings of the road are coming up so fast that I anticipate within a year, or a year and a half, this stock will go to par. I have recently put some $50,000 of my own funds into this stock, and I believe my judgment is sound on the proposition. I believe the common stock of the Spokane & Inland for a speculation is better at any time than any real estate investment you can go into.

"Consider this matter carefully, and write me about it, and if you decide you do not care to go into it, I will loan out the $2,000 for you on a real estate mortgage, but it will have to be loaned for three or five years. I can get commercial paper here payable in 90 days at about 6 per cent.

"With kind personal regards, I am

"Yours very respectfully,

"(Signed)  Fred B. Grinnell."

In response to this letter, appellant directed Grinnell to invest in the stock or rights involved here. She asserts that she thought she was buying *preferred stock* of the Spokane & Inland Empire Railroad Company as represented by Grinnell's letter, and did not inquire further into the matter, but deposited the paper as collateral security for the loan from her father in Sullivan, Illinois, where she had received the paper by mail from Grinnell. The document had the appearance to her of a stock certificate with the word "Preferred" printed across the face of it in large red letters, and is as follows:

Certificate for less than 100 rights

G 84                    Rights 22

Certificate for less than 100 rights.

Spokane and Inland Empire Railroad Company

Incorporated under the laws of the State of Washington.

This certifies that Mollie Thuneman is the owner of twenty-two preferred rights of the Spokane and Inland Empire Railroad Company of the par value of one hundred dollars ($100) each, transferable only on the books of said company by the owner in person, or by duly authorized attorney, upon the surrender hereof properly indorsed. Said preferred rights are part of an issue of $10,000,000 par value, issued and to be issued under the authorizat'on and subject to the provisions of section 6, article one of the by-laws of the company as the same were amended on October 25th, 1906, reference to which section is hereby made with the same force and effect as if the same were incorporated herein. The holder of this certificate by acceptance thereof hereby agrees to the terms and conditions of said section, and any amendments thereto made as therein provided, and to any step or action hereafter taken or done in accordance with said section, or any such amendment thereto.

The preferred rights represented by this certificate and this certificate are redeemable at any time at the option of the company by the payment of $135 for each $100 of said preferred rights and all accrued and unpaid dividends thereon. This certificate is not valid until countersigned by the Registrar.

Witness the seal of the company and the signature of its duly authorized officers this 2nd day of August, 1907.

This certificate is transferable either in New York City or Spokane, Washington.

(L S)      W. C. Davidson, Secretary.
           Jay P. Graves, President.
Rights $100 each.

Registered August 3rd, 1907 Northwest Loan & Trust Company By Adolph Galland, Registrar.

Countersigned Aug. 2nd, 1907 Union Trust Company of Spokane Transfer Agent by James C. Cunningham, Secretary.

After the purchase, receipt and hypothecation of this instrument at Sullivan, Illinois, appellant came to Spokane and spent about six weeks there in the fall of 1907. She married in 1909 and went to live in Everett, Washington. Her husband is a lawyer, and was in Spokane in 1910 and at several subsequent times attending to her business interests.

Two quarterly dividends were sent to appellant in 1908, but none thereafter, although she inquired of Grinnell for the subsequent dividends and was informed by him that the dividends were cumulative. In August, 1909, Grinnell wrote her in Illinois telling her of a big wreck, known as the Gibbs wreck, on the company's line, and that, because of it, he could not tell when the company would resume payment of dividends on the "preferred stock." Apparently in reply to that letter, she wrote him from Illinois that he need not be worried on her account because the railroad company was not paying a dividend; that no reasonable person could expect every venture to be a success, and that if she lost the money she would not worry over it; that she had always believed in the enterprise and still did believe in it.

Supposing that the dividends were cumulative, she did not further concern herself about them until about 1910-11, when she again inquired about the nonpayment of dividends, and Grinnell informed her that, on account of the Gibbs wreck and the Palouse floods washing out portions of the company's lines, the company was still in such condition that it could not pay dividends. In the early part of 1915, appellant again inquired of Grinnell about the condition of her stock or security, which inquiry was ignored. She took up the matter with the railroad company and the public service commission, but failing to get satisfaction and

being informed by the company that she had not purchased "preferred stock," she sent to Sullivan, Illinois, for the certificate. Within two months after the railroad company informed her that it had not sold her preferred stock, appellant commenced her action, praying that her alleged contract of purchase of "preferred rights" be rescinded and that she have and recover from defendants, and each of them, the sum of $1,980, with interest from August 2, 1912. Respondents pleaded two affirmative defenses; the statute of limitations, and laches.

Appellant claims the right to rescind the contract of sale and recover the money she paid for the preferred rights on the ground that the company was without power to issue the preferred rights, and that there was misrepresentation by Grinnell, its agent, in making the sale. There is an elaborate discussion by counsel for both sides upon the question of whether the company was without power to issue the preferred rights, so called, and whether the issue was, therefore, *ultra vires*.

Disregarding the discussion as to whether the transaction was *ultra vires*, we shall pass at once to consider the questions of the statute of limitations and laches, which we consider determinative of appellant's rights in this action. The transaction having been consummated in 1907 and the suit having been commenced in 1915, it is contended by appellant that she had no knowledge, and no means of knowledge, of the deception and fraud upon her until within a few months before she commenced the suit, and that she was lulled into a feeling of trust and reliance by Grinnell until she was finally informed by the company in 1915 that she had not purchased preferred stock at all.

Rem. Code, § 156, and § 159, subd. 4, are as follows:

"The period prescribed in the preceding section for the commencement of actions shall be as follows: . . .

"(§ 159)   Within three years, . . .

"An action for relief upon the ground of fraud, the cause of such action not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud; . . ."

Whatever was the exact nature of the instrument purchased by appellant—and it possibly falls within the cloudy category of undefinable corporate instruments called debentures (1 Bouvier, 3d ed., p. 84)—it was received by appellant, who was a woman of mature years, a shrewd and skillful investor, well educated, had taught school in Spokane for fifteen years, and was manifestly able to read and understand the terms and provisions of the instrument. It is inconceivable that, upon her receipt of the instrument at Sullivan, Illinois, she hypothecated it at once for a loan without understanding its contents. It was plainly headed, "Certificate for preferred rights; Rights 22," and began the statement of its provisions with the certificate that she "is the owner of 22 preferred rights of the Spokane & Inland Empire Railroad Company," etc. The terms then provided how the rights should be transferred; that they were part of an issue of $10,000,000, par value, issued and to be issued under the authorization, and subject to the provisions, of a certain article and section of the by-laws of the company as amended on October 25, 1906, and that a reference to those by-laws "is hereby made with the same force and effect as if same were incorporated herein." The certificate further provided that the holder of it, by acceptance thereof, agrees to the terms and conditions of the section of by-laws referred to and any amendment thereto made as therein provided,

and to any step or action thereafter taken or done in accordance therewith, or any such amendment thereto. It plainly provided that the preferred rights represented by the certificate were redeemable at the option of the company by the payment of $135 for each $100 of such preferred rights. The instrument bore upon its face, in red ink in large type, the word "Preferred." The by-laws referred to in the instrument and by Grinnell in his letters to appellant provided for the payment of dividends and one and one-fourth per cent interest quarterly, subject to the ability of the company to pay.

It would be impossible for a person of ordinary intelligence, much less a person of the intelligence and ability of appellant, to have misunderstood the contents of this instrument upon a casual reading thereof, and certainly she could not have been misled by any statement to her by Grinnell that the issue was of preferred stock. Even had it been of preferred stock, its value might have been no better, and possibly less, than this. This instrument, while it was neither capital stock nor an incumbrance upon the property, was undoubtedly an instrument acknowledging indebtedness and agreeing to pay dividends and interest for the money received and a considerable bonus in addition thereto. But it is immaterial what it was precisely, for, having it and knowing its contents, and being required by the terms thereof to refer to the by-laws of the company for further information as to its obligation, she could not claim that she had been deceived by misrepresentations on the part of Grinnell, even conceding him to be the agent only of the company in the transaction.

We have always held that a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to

read the instrument, cannot claim to have been misled concerning its contents or to be ignorant of what is provided therein. *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117; *Hubenthal v. Spokane & Inland R. Co.,* 43 Wash. 677, 86 Pac. 955; *Golle v. State Bank of Wilson Creek,* 52 Wash. 437, 100 Pac. 984. And that,

" 'Whatever is notice enough to excite attention and put the party on guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.' . . . 'The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it'." *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561.

A party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clew to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to a discovery. *Norris v. Haggin,* 28 Fed. 275; *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360; *Kline v. Galland,* 53 Wash. 504, 102 Pac. 440; *Uhlbright v. Mulcahy,* 78 Wash. 9, 138 Pac. 314.

"A party seeking to rescind for fraud or false representations must do so within a reasonable time, and the right is lost by failure to act promptly on discovery of the fraud, or after it might have been discovered by the use of due diligence." 13 C. J. 616.

See, also, *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161.

And mere silence is not sufficient concealment of fraud to interfere with the running of the statute of limitations where the facts are readily ascertainable. There must be some hindrance or impediment interposed, or some fraudulent concealment by the defend-

ant, to have that effect.  *Sackman v. Campbell,* 15
Wash. 57, 45 Pac. 495; *Kline v. Galland, supra.*

We are therefore convinced that appellant's action
is barred both by her own laches and by the statute
of limitations.

Judgment affirmed.

MAIN, C. J., PARKER, MACKINTOSH, MITCHELL, FUL-
LERTON, MOUNT, and TOLMAN, JJ., concur.