# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TRACI TURNER,

    Appellant/Cross Respondent,

    v.

VULCAN, INC., PAUL ALLEN, JODY ALLEN,

    Respondents/Cross Appellants,

RAY COLLIVER, and LAURA MACDONALD,

    Respondents.

No. 71855-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 2, 2015

TRICKEY, J. — In a motion to compel arbitration, a trial court must determine whether there is a valid agreement to arbitrate and, if so, whether the dispute is within the scope of that agreement. Here, the agreement to arbitrate is neither procedurally nor substantively unconscionable. The subject of the dispute is contained within the agreement to arbitrate. The challenge to the contract as a whole is a question for the arbitrator. Because this arbitration provision is part of an employment contract, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies.

The claims presented here are in connection with what is largely an employment dispute based primarily on an employee's statutory claims asserted under the Washington Law Against Discrimination Act (WLAD), chapter 49.60 RCW, and the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. Because the employer's requested attorney fees would frustrate the broad

remedial purposes of those acts, we affirm the arbitrator's award granting attorney fees only for the employer's motion on the validity of the employee's release of claims against the employer and for prevailing on the defamation claim.

In all respects, we affirm the trial court's order affirming the arbitrator's award.

## FACTS

Vulcan, Inc. hired Traci Turner as a senior executive protection (EP) specialist in January 2011. At the same time, Turner signed an Employee Intellectual Property Agreement (EIPA) providing for an award of attorney fees to the prevailing party in any lawsuit arising out of her employment or the agreement itself.

Vulcan promoted Turner to the lead EP detail for Paul Allen in April 2011. In May 2011, she was assigned as the lead EP for Paul Allen's personal security detail. Two months later, in July 2011, Turner signed a Guaranteed Bonus Agreement (GBA), waiving and releasing any then-existing claims against Vulcan and agreeing to confidential arbitration in exchange for a guaranteed bonus payment in excess of the maximum wages she would otherwise receive. Turner's yearly wage at the time was $140,000.00. Her minimum guaranteed bonus was $25,156.00, subject to proration if her employment ended before the end of the year.

On September 23, 2011, Turner submitted her resignation, which she characterized as a constructive discharge. Shortly thereafter, Turner filed her first employment discrimination suit against Vulcan and several of its executives

2

(Turner I). Vulcan immediately moved for an order compelling arbitration based on the GBA. Judge Patrick Oishi granted Vulcan's motion, compelled arbitration, and stayed the proceedings in King County Superior Court.

Turner moved for reconsideration and Vulcan responded. Before any decision was made on the reconsideration motion, Turner filed a notice of voluntary dismissal that was granted ex parte on November 1, 2011. Turner's stated reason for dismissal was that a mediation involving other Vulcan employees was taking place and, if successful, would resolve all of the issues. That mediation was unsuccessful, however. None of the other employees involved in the mediation voluntarily dismissed the cases that they had filed in superior court. One of those employees who, like Turner, had signed a GBA, was ordered to arbitration on February 24, 2012, by a different judge.

Meanwhile, on December 14, 2011, Vulcan initiated arbitration proceedings asserting several claims against Turner. The next day, Turner's counsel, Jerald Pearson, sent an e-mail informing Vulcan that Turner's current instructions to him were to refile the court case and to not accept the arbitration process. On January 5, 2012, Pearson withdrew as Turner's counsel.

On January 26, 2012, Vulcan e-mailed Turner's new attorney, Patrick McGuigan of the HKM law firm,[1] informing him that it had filed arbitration proceedings and intended to proceed with its claims. Vulcan asserted breach of the EIPA, anticipatory breach of the EIPA, breach of duty of loyalty, breach of confidential relationship, violation of Computer Fraud and Abuse Act (18 U.S.C. §

---

[1] For ease of reference, we refer to McGuigan and HKM law firm collectively as HKM.

1030), repayment of prorated bonuses, declaratory relief for nonliabilty for the employment related causes of action, fraud, defamation, and any actions prior to July 26, 2011.

On January 27, Turner filed a second lawsuit in superior court (Turner II), which was assigned to Judge Monica Benton. Her complaint reiterated the first five claims made in Turner I and asserted five additional claims. The first complaint asserted claims for gender discrimination, constructive termination, retaliation, hostile work environment, and defamation. The five additional claims asserted in Turner II were sexual orientation discrimination, age discrimination, intentional infliction of emotional distress, negligent infliction of emotional distress, and withholding of wages.

After unsuccessfully trying to transfer this second suit to Judge Oishi, Vulcan moved to dismiss the complaint because of the doctrines of res judicata and issue preclusion, and, alternatively, to once again compel arbitration under the GBA. On March 5, 2012, Turner filed a CR 60 motion to vacate the order compelling arbitration in Turner I.

On March 9, 2012, HKM notified the arbitrator of Turner's counterclaims against Vulcan and its executives. In that notification, HKM also challenged the arbitrator's jurisdiction, noting that Turner would request a schedule to brief that issue during a telephonic case management conference set for March 26, 2012.

The trial court heard oral argument on April 5, 2012. On April 16, the court entered an order denying Turner's CR 60 motion, but reserved ruling on Vulcan's

motion to dismiss affording the parties an opportunity to submit additional briefing on whether the additional claims were subject to mandatory arbitration.

On June 8, 2012, the court entered an order dismissing the first five claims that were already subject to arbitration as a result of Judge Oishi's order in Turner I. The court also dismissed the remaining five claims and referred them to the arbitration that was already in progress.

During these legal proceedings in Turner II, HKM also sought to pursue discovery. Vulcan disputed Turner's right to proceed with legal depositions, informing HKM that discovery was available in the arbitration proceedings.[2] Judge Benton granted Vulcan's motion for a protective order and quashed the depositions.

On July 13, 2012, HKM requested a four month continuance of the arbitration hearing scheduled for November 26, 2012, to pursue discovery. The arbitrator denied the continuance. On July 16, Vulcan sent a notice that it intended to depose Turner's current and past psychologists and her partner.

On July 30, 2012, HKM sent a letter stating that financial constraints on Turner would force a discontinuance of the arbitration. Previously, in response to

---

[2] Am. Arbitration Ass'n, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 9 (Nov. 1, 2009). Rule 9 provides:

> The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

> The [American Arbitration Association (AAA)] does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

HKM's inquiry regarding applicable rules, the American Arbitration Association (AAA) case manager had indicated that the employment arbitration rules applied. The case manager subsequently billed both parties in excess of $20,000.00. Vulcan paid its portion of the fees, and Turner paid $900.00.

After receiving HKM's notice of discontinuance, the case manager for AAA sent a letter advising that Turner would not be pursuing the counterclaims but noting that the matter was moving forward with Vulcan's claims. Vulcan objected to the dismissal of Turner's claims under CR 41(a)(3) arguing, inter alia, that the GBA was an employer promulgated plan and, under the rules of the AAA, Vulcan was responsible for the costs of the arbitration pertaining to those employment claims as well as the arbitrator's fees. Vulcan eventually paid all the administrative costs of the arbitration as well as the arbitrator's fees, totaling $34,961.24.

On August 9, 2012, Turner filed a motion to dismiss claims and end the arbitration proceedings. Turner argued that, in view of Vulcan's failure to advise the AAA that the GBA was an employer promulgated agreement, it could not now offer to pay all fees to continue the arbitration. On August 21, 2012, the arbitrator issued her ruling denying Turner's motion to dismiss and end the arbitration proceedings. The arbitrator based her ruling on the fact that Turner's pleadings cited Rule 48 of the AAA rules,[3] which permitted the parties to disagree with the

---

[3] Am. Arbitration Ass'n, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 48 (Nov. 1, 2009). Rule 48 provides:

**Costs of Arbitration (including AAA Administrative Fees)**

This Costs of Arbitration section contains two separate and distinct sub-sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contact.

determination of fees, but that she had failed to do so earlier. Vulcan had no obligation to assert a claim on Turner's behalf. Because Vulcan agreed that it was responsible for the fees, there was no impediment to Turner pursuing arbitration of her employment claims. The arbitrator gave Turner five days to reinstate her counterclaims.

On August 27, 2012, HKM withdrew as Turner's attorney. On September 7, 2012, Turner, representing herself, requested a four month continuance. The arbitrator denied the continuance without prejudice and set a schedule for Vulcan's motions for summary judgment and Turner's response.

On October 16, 2012, Vulcan deposed Turner's current psychologist. Turner was present at that deposition and asked questions. The following day, based on her experience in the deposition, Turner sent an e-mail stating that she was withdrawing from the arbitration.

The arbitration hearing took place as scheduled on November 26, 2012, without Turner.[4] The arbitrator entered Findings of Fact, Conclusions of Law, and an Interim Arbitration Award on December 21, 2012. The interim award dismissed

---

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination shall be made on documents only, unless the arbitrator deems a hearing is necessary.

[4] Am. Arbitration Ass'n, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 29 (Nov. 1, 2009). Rule 29 provides:
Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative, who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitration shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

Turner's claims with prejudice and awarded Vulcan $5,696.63 based on Turner's breach of contract for failing to repay Vulcan a portion of the bonuses received at the start of her employment since she left before the end of the year.

Vulcan requested $117,735.00 in fees for its efforts in securing a second court order compelling arbitration and its success in claims outside of the statutory discrimination claims (recovery of defamation and recovery of bonus).

On March 7, 2013, the arbitrator awarded Vulcan $113,235.00 in attorney fees under the EIPA, which contained a fee provision. Because the dispute arose out of Turner's employment and Vulcan was the prevailing party, the arbitrator found that Vulcan was entitled to fees except for amounts incurred in defending against Turner's statutory employment discrimination claims.

The arbitrator limited the fees to those incurred

> in the second lawsuit in which Vulcan successfully sought to enforce the arbitration provision contained in the Guaranteed Bonus Agreement (Turner II). Vulcan does not seek fees incurred in the first lawsuit in which it successfully sought to enforce the arbitration provision (Turner I). Vulcan has further limited its request to only those fees incurred in Turner II for partners Harry H. Schneider Jr., Joseph M. McMillan, and then associate Jeffrey M. Hanson, and only as to days on which the lawyer billed at least three hours on this matter.[5]

Vulcan and its executives moved to confirm the final arbitration award and for judgment against Turner. Rebecca Roe entered a notice of appearance for Turner causing Vulcan's motion for confirmation to be reassigned to Judge Bruce Heller, who then entered an order confirming the award on April 5, 2013.

---

[5] Clerk's Papers (CP) at 4072.

Turner moved for reconsideration. Judge Heller granted Turner's motion for reconsideration and set the matter for oral argument.

Turner sought to vacate the final award, arguing that the arbitrator's denial of Turner's request for a continuance amounted to misconduct and that the award of attorney fees was "irrational"[6] and, further, that the arbitrator violated public policy and exceeded her authority under the state constitution. WASH. CONST. art. IV, § 6.

At the hearing to confirm the arbitration award, Judge Heller requested supplemental briefing on whether attorney fees for Vulcan's efforts to compel arbitration a second time violated public policy. The court then entered an order confirming in part and vacating in part the arbitration award. The matter was remanded to the arbitrator to consider whether Vulcan's alternative fee request related to non-statutory claims.

On remand the arbitrator revisited her attorney fee award and, after receiving revised information from Vulcan, awarded $39,524.50 in attorney fees to Vulcan as follows: $18,875.00 incurred for its successful motion for partial summary judgment on Turner's defamation claim, and $21,449.50 for prevailing on the partial summary judgment motion on the enforceability of the contractual release signed by Turner. The court upheld the revised award and entered final judgment.

---

[6] CP at 2601.

9

Vulcan then moved to confirm the amended final award. Turner responded and requested attorney fees for prevailing on the reduction of attorney fees awarded in the first final arbitration award. The court denied her request.

Turner appeals the trial court orders compelling arbitration in Turner I and Turner II, the final judgment and final arbitration award, and the order denying her request for attorney fees.

Vulcan cross appeals, objecting to the reduction of attorney fees from the original amount awarded by the arbitrator.

## ANALYSIS

The party opposing arbitration has the burden of demonstrating that an arbitration agreement is not enforceable. Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004). This court reviews de novo a trial court's decision to compel or deny arbitration. Gandee v. LDL Freedom Enter., Inc., 176 Wn.2d 598, 602, 293 P.3d 1197 (2013); Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (2009).

Turner moved to vacate the final arbitration award. That motion to vacate necessarily includes our answering the question of whether the trial court appropriately granted the motion to compel arbitration. Tuefel Constr. Co. v. Am. Arbitration Ass'n, 3 Wn. App. 24, 26-27, 472 P.2d 572 (1970) (order compelling arbitration not appealable, but if arbitrator without authority, court may later refuse to confirm award); see also ACF Prop. Mgmt., Inc. v. Chaussee, 69 Wn. App. 913, 921, 850 P.2d 1387 (1993); Agnew v. Lacey Co-Play, 33 Wn. App. 283, 288, 654 P.2d 712 (1982) ("If a dispute is not arbitrable, the arbitrators have no power to

resolve it."). Failure to seek discretionary review of a motion to compel arbitration does not waive a later challenge. Saleemi v. Doctor's Assocs., Inc., 176 Wn.2d 368, 376, 292 P.3d 108 (2013) (citing with approval Division Two's rejection of the proposition that such failure waives a later challenge in Saleemi v. Doctor's Assocs., Inc., 166 Wn. App. 81, 91, 269 P.3d 350 (2012)). Here, the trial court correctly compelled arbitration.

Under both federal and state law, a request to compel arbitration presents two threshold questions: (1) whether there is an agreement to arbitrate and, if so, (2) whether the dispute is within the scope of that agreement. If the answer to both questions is affirmative, the trial court's authority is substantially constrained. See Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 402, 200 P.3d 254 (2009). Because this is a dispute between an employee and her employer, the FAA governs. See Zuver, 153 Wn.2d at 301 (citing 9 U.S.C. § 2).

Turner argues that it is the court, not the arbitrator, that determines whether an arbitration clause is valid and enforceable. While it is true that the courts determine whether an arbitration clause is valid and enforceable, that determination is separate and distinct from the question of the validity of the contract as a whole. McKee v. AT&T Corp., 164 Wn.2d 372, 383-84, 191 P.3d 845 (2008). Here, Turner challenges the validity of the contract itself.

A challenge to the validity of the parties' contract as a whole, as opposed to the arbitration clause contained in the contract, is for the arbitrator to decide. See McKee, 164 Wn.2d at 394.

11

The United States Supreme Court has addressed these gateway challenges to arbitration under the FAA, beginning with Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). There, the Court held that a challenge to the validity of the entire agreement as fraudulently induced was for the arbitrator, not the court. Prima Paint, 388 U.S. at 404.

In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46,126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), the United States Supreme Court reached the same conclusion. Analyzing its earlier decisions, including Prima Paint, the Court restated three pertinent principles:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

Buckeye, 546 U.S. at 445-46. The Court concluded "that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." Buckeye, 546 U.S. at 446.

Here, Turner challenges the contract as a whole, arguing that she was forced to sign the contract for fear of losing her job and that she was not given sufficient time to review it. Like in Prima Paint and Buckeye, these are issues that need to be addressed by the arbitrator.

The parties' contract, here, provides that

12

[a]ny and all claims, disputes, or other matters in controversy on any subject arising out of or related to this Agreement and your employment shall be subject to confidential arbitration.[7]

This language is a "clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009); see also Preston v. Ferrer, 552 U.S. 346, 349, 28 S. Ct. 978, 169 L. Ed. 2d 917 (2008) (when parties agree to arbitrate all questions arising under the contract, the question of arbitrability is for the arbitrator).

In Preston v. Ferrer, 552 U.S. 346, 28 S. Ct. 978, 169 L. Ed. 2d 917 (2008), the contract provided that the arbitration would be in accordance with the rules of the AAA. One of those rules, Rule 7(b), provided that the arbitrator has the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Preston, 552 U.S. at 362. The Court held that to be a sufficient indicator that the parties intended the arbitrator and not the court to determine the arbitrability. Similarly here, the GBA provided that "any arbitration proceedings shall be conducted in Seattle, Washington in accordance with applicable AAA rules."[8] This requirement furthers Congress's intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 US.1, 22, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

Arbitration is a matter of contract. "'[I]t is the language of the contract that defines the scope of disputes subject to arbitration.'" NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010 (2nd Cir. 2014) (quoting EEOC v. Waffle House,

---

[7] CP at 281.
[8] CP at 1570.

Inc., 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). There is a body of substantive federal law that both state and federal courts are required to apply. Perry v. Thomas, 482 U.S. 483, 489, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).

Turner also contends that the trial court erred in compelling arbitration because the GBA she signed was procedurally and substantively unconscionable. Washington recognizes two types of unconscionability for invalidating arbitration agreements, procedural and substantive. McKee, 164 Wn.2d at 396-402. Procedural unconscionability applies to impropriety during the formation of the contract, while substantive unconscionability applies in cases where a term in the contract is alleged to be one-sided or overly harsh. Nelson v. McGoldrick, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995). Either is sufficient to void the agreement. Hill v. Garda CL Nw., Inc., 179 Wn.2d 47, 55, 308 P.3d 635 (2013) (citing Adler v. Fred Lind Manor, 153 Wn.2d 331, 347, 103 P.3d 773 (2004)).

Procedural Unconscionability

Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction including '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print." Zuver, 153 Wn.2d at 303 (alterations in original) (internal quotation marks omitted) (quoting Nelson, 127 Wn.2d at 131). None of those circumstances are present here. The GBA offered Turner a guaranteed bonus in 2011 for a full release of claims, arbitration, and confidentially.

14

In her declaration opposing arbitration in her first case, Turner indicated that, although the agreement itself provided that she could seek review by counsel, the agreement had to be signed within 24 hours. In her declaration in Turner II, Turner said she felt she would be fired if she did not sign the agreement within 24 hours and that the arbitration agreement itself was confusing because she did not have an opportunity to "find out" what the AAA rules said. There is no evidence that Turner sought additional time to make her decision or that she felt she needed to consult with counsel before signing the agreement.

The law is well settled that absent fraud or misrepresentation, a party who voluntarily and knowingly signs a written contract is bound by its terms. Nat'l Bank of Wash. v. Equity Inv'rs, 81 Wn.2d 886, 912, 506 P.2d 20 (1973), superseded by statute on other grounds by LAWS OF 1973, 1st Ex. Sess., ch. 47, § 3. "[I]gnorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it . . . ." Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 897, 28 P.3d 823 (2001). A party who has the opportunity to read a plain and unambiguous instrument cannot claim to have either been misled by or ignorant of its terms. Equity Inv'rs, 81 Wn.2d at 913 (quoting Johnston v. Spokane & I.E.R. Co., 104 Wash. 562, 569, 177 P. 810 (1919)). Moreover, in Turner's motion for relief from the order compelling arbitration (Turner II), HKM argued that Turner "did not even read the agreement, which was in the form of a letter. She simply turned the letter to its last page and signed it."[9]

---

[9] CP at 594.

Turner next argues that the GBA is an adhesion contract and therefore unconscionable. As this court recently noted, the key inquiry is whether an employee lacked a meaningful choice. Such a choice can always include employment elsewhere. Romney v. Franciscan Med. Grp., 186 Wn. App. 728, 736-37, 349 P.3d 32 (2015), review denied, No. 91686-1 (Wash. Sept. 30, 2015). Similarly in Zuver v. Airtouch Communications, Inc., 153 Wn.2d 293, 103 P.3d 753 (2004), the court concluded that an employment agreement offered to an employee on a "take it or leave it" basis is insufficient to negate the existence of an arbitration agreement where the employee had a reasonable opportunity to inspect the agreement and the terms were fully disclosed. 153 Wn.2d at 305.

Likewise here, the terms of the agreement were fully disclosed and Turner was afforded a reasonable opportunity to inspect the agreement. Her argument that she signed only because she thought she would lose her job does not support a finding of procedural unconscionability under Washington law. This is particularly true here, because the language in the GBA itself clearly stated that Turner was entitled to seek advice before executing the agreement. Furthermore, none of the paragraphs contained in the GBA were of small type or buried in a sea of fine print.

Substantive Unconscionability

Substantive unconscionability focuses on the terms of the agreement and the presence of overly harsh or one-sided results. To be substantively unconscionable, the contract must shock the conscious, be monstrously harsh, or

16

exceedingly callous. Romney, 186 Wn. App. at 740 (quoting Alder, 153 Wn.2d at 344-45). None of these terms apply to the contract here.

On appeal, Turner argues for the first time that the GBA contained a unilateral litigation option, making the agreement one-sided. The clause in question provides that

> Vulcan shall have the right, upon its election, to seek emergency injunctive relief in court in aid of arbitration to preserve the status quo pending determination of the merits in arbitration.[10]

Similarly, Turner would also have the right to seek such relief if Vulcan had pursued its recovery in litigation rather than in arbitration. For example, if Vulcan had sued Turner to recover the funds overpaid in court, Turner could have moved to compel arbitration, thus seeking a stay and preserving the status quo pending the determination. Even if this were not the case, this court has already held that mutuality of obligation does not mandate identical requirements. Romney, 186 Wn. App. at 742. "In short, substantive unconscionability does not concern 'whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so "one-sided" as to render it patently "overly harsh.""" Romney, 186 Wn. App. at 742 (quoting Zuver, 153 Wn.2d at 317 n.16).

Here, Vulcan had the initial burden of proving the existence of the agreement to arbitrate the parties' dispute. Submission of the EIPA and the GBA agreements, both signed in 2011, met this burden. Those documents included provisions that all matters in dispute of the agreement and arising from employment were subject to binding arbitration. Once the existence of that valid

---

[10] CP at 281.

agreement to arbitrate was established, the burden shifted to Turner, as the party opposing arbitration, to demonstrate that the agreement could not be interpreted to require arbitration of her disputes. This Turner has failed to do. General allegations concerning lack of discussion or understanding regarding the inclusion of an arbitration clause are insufficient to prevent arbitration. Cady v. A.G. Edwards & Sons, Inc., 648 F.Supp. 621, 623-24 (1986).

Turner argues that the provision requiring confidentiality of the arbitration violates both McKee v. AT&T Corp., 164 Wn.2d 372, 191 P.3d 845 (2008), and Zuver. But confidential agreements have been upheld as the exception to the state constitutional requirement for public judicial proceedings. Barnett v. Hicks, 119 Wn.2d 151, 159, 829 P.2d 1087 (1992). Confidentiality agreements are routinely found in collective bargaining agreements. Zuver, 153 Wn.2d at 314 (citing Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1477 (D.C. Cir. 1997)). In Zuver, the court held the confidentially agreement unconscionable because it hampered an employee's ability to prove a pattern of discrimination. 153 Wn.2d at 315. Even so, there, the Zuver court struck the provision rather than finding the entire agreement unconscionable. 153 Wn.2d at 322.

McKee involved a consumer dispute. The court held the policy of confidentially to be in direct conflict with public policy, particularly because it dealt with consumers. McKee, 164 Wn.2d at 398-99.

The scenarios in Zuver and McKee are not present here. Furthermore, the confidentiality clause is not particularly one-sided because it benefits both the employee and the employer. Vulcan, Paul Allen, his family, and Vulcan's

executives obviously desire their privacy. Any employee, such as Turner, would desire that the particulars of his or her employment be private, particularly, as here, when it involves Turner's personal details. Neither the litigation clause nor the confidentiality clause is substantively unconscionable.

Constitutional Issues

Turner next argues that the arbitration agreement violates both her constitutional right to a jury trial and the separation of powers doctrine by improperly delegating judicial authority to arbitrators. Neither contention has any merit. First, there is no dispute that Turner signed the agreement at issue. Once that has been established "a party implicitly waives his [or her] right to a jury trial by agreeing to an alternative forum, arbitration." Adler, 153 Wn. 2d at 360-61.

Second, the FAA is not an incursion on the separation of powers. The FAA permits enforcement of agreements to arbitrate. Its primary purpose is to ensure that private agreements to arbitrate are enforced in accordance with its terms. Such challenges to arbitration agreements as an unconstitutional delegation of judicial power have uniformly been rejected. Snyder v. Superior Court of Amador County, 24 Cal. App. 2d 263, 74 P.2d 782 (1937); see also Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 855, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986).

In Schor, a case discussing the limited jurisdiction of the Commodity Futures Trading Commission, the Court stated:

> In such circumstances, separation of powers concerns are diminished, for it seems self-evident that just as Congress may encourage parties to settle a dispute out of court or resort to arbitration without impermissible incursions on the separation of

19

powers, Congress may make available a quasi-judicial mechanism through which willing parties may, at their option, elect to resolve their differences.

478 U.S. at 855.

Turner relies on State ex rel. Everett Fire Fighters, Local No. 350 v. Johnson, 46 Wn.2d 114, 121, 278 P.2d 662 (1955), wherein the court held that the municipal charter requiring fire fighter contract disputes to be arbitrated was unconstitutional. As the Supreme Court noted in City of Spokane v. Spokane Police Guild, 87 Wn.2d 457, 464, 553 P.2d 1316 (1976), Everett Fire Fighters "was decided prior to the enactment . . . of the Public Employees' Collective Bargaining Act . . . and what was held unlawful in that case is now both lawful and mandatory." Everett Fire Fighters does not apply here.

### Turner's Request for Attorney Fees

Turner argues that she is a prevailing party because she succeeded in substantially reducing the attorney fees awarded to Vulcan for Vulcan's prevailing in its suit against her. The prevailing party was Vulcan. Turner did not prevail on any of the claims submitted to arbitration. Turner cites Johnson v. Department of Transportation, 177 Wn. App. 684, 695 n.7, 313 P.3d 1197 (2013), review denied, 179 Wn.2d 1025, 320 P.3d 718 (2014), for the "general rule [that] fees incurred while litigating an entitlement to fees are recoverable under remedial statues such as the WLAD." In Johnson, an employee sought an award of attorney fees after a successful settlement of a claim against the State. Johnson was in fact the prevailing party.

Here, Turner is not the prevailing party. RCW 4.84.330 states, "As used in this section 'prevailing party' means the party in whose favor final judgment is rendered." See also Blair v. Wash. State Univ., 108 Wn.2d 558, 571-72, 740 P.2d 1379 (1987) ("In Washington, the prevailing party is the one who receives judgment in that party's favor" or "succeeds on any significant issue which achieves some benefit the party sought in bringing suit.") (citing Andersen v. Gold Seal Vineyards, Inc., 81 Wn.2d 863, 505 P.2d 790 (1973); Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Turner is not entitled to an award of attorney fees.

### Attorney Fees and Vulcan's Cross Appeal

As noted above, the arbitrator initially awarded Vulcan $113,235.00 for attorney fees incurred in connection with the litigation in Turner II. Because the attorney fee award violated public policy, the trial court vacated it and remanded to the arbitrator to determine Vulcan's alternative basis for the fees.

On remand, the arbitrator awarded Vulcan $39,524.50 for reasonable attorney fees in connection with two successful partial summary judgments obtained by Vulcan. Those amounts include $18,875.00 awarded for Vulcan's successful dismissal of Turner's defamation claim, and $21,449.50 for prevailing on the enforceability of the contractual release signed by Turner in the GBA.

Turner contends that the reduced amended award is likewise against public policy and should be reversed. Vulcan cross appeals and contends that the superior court erred when it vacated on public policy grounds that part of the initial arbitration award granting it attorney fees.

It is well settled that a court may vacate an arbitration award that violates a well-defined, explicit, and dominant public policy, such as the laws in the WLAD. Int'l Union of Operating Eng'rs, Local 286 v. Port of Seattle, 176 Wn.2d 712, 722-23, 295 P.3d 736 (2013).

In its Memorandum Opinion vacating the arbitrator's attorney fee award, the trial court recognized that Turner's claims under the WLAD and the MWA were subject to this dominant public policy. The WLAD aims "'to enable vigorous enforcement of modern civil rights litigation and to make it financially feasible for individuals to litigate civil rights violations.'" Martinez v. City of Tacoma, 81 Wn. App. 228, 235, 914 P.2d 86 (1996) (quoting Hume v. Am. Disposal Co., 124 Wn.2d 656, 675, 880 P.2d 988 (1994)). Thus, prevailing plaintiffs, but not prevailing defendants, are entitled to reasonable attorney fees. RCW 49.60.030(2); Collins v. Clark Cty. Fire Dist. No. 5, 155 Wn. App. 48, 104-05, 231 P.3d 1211 (2010). Likewise, the legislature in enacting the MWA expressed a similar strong policy. See, e.g., Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 157, 961 P.2d 371 (1998) ("The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages."). Thus, an award of attorney fees to an employer who prevails as a defendant in an action under these legislative actions violates public policy.

In Gandee v. LDL Freedom Enterprises, Inc., 176 Wn.2d 598, 606, 293 P.3d 1197 (2013), our Supreme Court held that a "loser pays" provision in an arbitration agreement, found in a debt adjustment contract, to be unconscionable because it

served to benefit only LDL Freedom and chilled a consumer's ability to bring a suit under the Consumer Protection Act (CPA), chapter 19.86 RCW.

We reached a similar conclusion in Walters v. A.A.A. Waterproofing, Inc., 151 Wn. App. 316, 324-25, 211 P.3d 454 (2009), where we stated:

> While Walters is assured that he will recover his expenses and legal fees if he wins decisively, he must assume the risk that if he loses, he will have to pay Waterproofing's expenses and legal fees. This risk is an enormous deterrent to an employee contemplating a suit to vindicate the right to overtime pay. Under these circumstances, in the context of an employee's suit where the governing statutes provide that only a prevailing employee will be entitled to recover fees and costs, a reciprocal attorney fees provision is unconscionable and, therefore, unenforceable.

The provision in the EIPA here is similar to the "loser pays" provisions held unconscionable in both Gandee and Walters. By limiting its initial request for fees to those incurred in Turner II, Vulcan itself recognized the inapplicability of the EIPA to the arbitration proceedings. The fees the arbitrator awarded were for the second motion to compel arbitration in Turner II as well as other attorney fees incurred during that litigation, e.g., quashing discovery.

Turner, although compelled to submit to arbitration by the court order issued by Judge Oishi, filed a second suit, thereby generating additional costs and attorney fees. But the fees in the litigation of Turner II were incurred in a motion to compel arbitration in a suit brought by Turner based in part on the WLAD and the MWA. However, in Turner II, the court's order compelling arbitration did not find that Turner had done anything inappropriate in bringing her five additional claims in a second suit.

23

Vulcan relies on Zuver to support the award of attorney fees in the Turner II litigation. In Zuver, the employee asserting claims under WLAD challenged the attorney fee provision requiring that the party who filed the judicial action must pay attorney fees and costs to the opposing party who successfully stays and/or compels arbitration. Because the proviso enabled either party to recover fees, the court ruled that it did not "appear to be so one-sided and harsh as to render it substantively unconscionable." Zuver, 153 Wn.2d at 319.

But as noted in Gandee, Zuver merely addressed "the possibility that the arbitrator would refuse to award a prevailing plaintiff costs and fees as required under the CPA." Gandee, 176 Wn.2d at 605-06 (emphasis omitted) (citing Zuver, 153 Wn.2d at 310-12). Here, that possibility became a reality, and when applied to Turner's claims under the WLAD and the MWA, the EIPA provision becomes unconscionable. Thus, the trial court was correct in vacating the attorney fees initially awarded for litigation costs in Turner II. Vulcan is not entitled to attorney fees in its defense against claims asserted under the WLAD and the MWA. The trial court's order vacating that portion of the arbitrator's award was correct.

Standing alone, the EIPA provision is not substantively unconscionable, particularly when applied to claims to other than those asserted to recover monies an employee might be entitled to under the WLAD and the MWA. Here, the arbitrator awarded fees for two separate partial summary judgment motions regarding the GBA. The arbitrator concluded that the unsuccessful defamation claim and the enforceable contractual release signed by Turner were valid

alternative grounds for the award of attorney fees unrelated to the statutory claims under the WLAD and the MWA.

The trial court accepted the arbitrator's decision. Defamation and a contractual release are not necessarily intertwined with statutory claims under the WLAD and the MWA. The narrow grounds to vacate or modify an arbitrator's decision include a facial error "on the face of the award" but such an error is rarely demonstrated. Broom v. Morgan Stanley DW, Inc., 169 Wn.2d 231, 236-37, 236 P.3d 182 (2010). We see no facial legal error in the arbitrator's alternative grounds award of attorney fees.

We affirm the arbitrator's award of $18,875.00 for Vulcan's successful dismissal of Turner's claim of defamation and $21,449.50 for prevailing on the enforceability of the contractual release signed by Turner. That claim is outside the purview of either the WLAD or the MWA, and, as such, is subject to the attorney fee clause found in the EIPA.

Attorney Fees on Appeal

Finally, both parties request attorney fees on appeal. RAP 18.1. Because Vulcan substantially prevailed on the appeal of the enforceability of the arbitration agreement, and Turner substantially prevailed on the cross appeal of the reduction of the attorney fee award, there is no "prevailing party" under RCW 4.84.330 or the attorney fee provision in the EIPA. American Nursery Prods., Inc. v. Indian Wells Orchards, 115 Wn.2d 217, 234-35, 797 P.2d 477 (1990); Philips Bldg. Co, Inc. v. An, 81 Wn. App. 696, 701-02, 915 P.2d 1146 (1996). We decline to award fees to either party.

25

The trial court is affirmed in requiring arbitration and in the award of $5,696.63 for breach of contract. The attorney fees award is affirmed.

Trickey, J

WE CONCUR:

Cox, J.